UNITED STATES DISTRICT COURT
<u>NORTHERN DISTRICT OF NEW YORK</u>

**PATRICK B. o/b/o D.B.,**

                **Plaintiff,**

    **-against-**                                                       **8:19-CV-0823 (LEK)**

**ANDREW SAUL,**
**Commissioner of Social Security,**[1]

                Defendant.

## MEMORANDUM-DECISION AND ORDER

**I.    INTRODUCTION**

This Social Security appeal is before the Court following a decision of the Commissioner of the Social Security Administration ("SSA") denying Plaintiff benefits. Both parties have filed briefs. Dkt. Nos. 7 ("Plaintiff's Brief"), 10 ("Defendant's Brief").

On appeal, Plaintiff argues that the Administrative Law Judge ("ALJ") failed to properly evaluate three of the six functional domains that could categorize Plaintiff as disabled. <u>See</u> generally Pl.'s Br.

For the reasons that follow, the Court remands this case to the Commissioner for further proceedings consistent with this decision.

**II.    BACKGROUND**

    **A.  Procedural History**

Plaintiff D.B., born on January 31, 2007, filed for supplemental security income on January 4, 2016, alleging disability under Title XVI of the Social Security Act based on trouble

---

[1] Saul is automatically substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this case. <u>See</u> Fed. R. Civ. P. 25(d).

hearing, a learning disability, and trouble seeing. See Dkt. No. 6 ("Record") at 10, 127–32. Plaintiff's application was denied initially. Id. He then requested a hearing and appeared and testified before ALJ Patrick H. Morrison on March 29, 2018. Id. at 10. In a decision dated June 8, 2018, ALJ Morrison found that Plaintiff was not disabled under the Social Security Act. Id. at 10–33. The Appeals Council denied Plaintiff's request for review of the ALJ's decision, id. at 1–6, making the ALJ's decision the final decision of the Commissioner.

### B. Factual History

As stated by Plaintiff, and incorporated by the Commissioner, most of the Plaintiff's relevant medical evidence is within his school records. Pl.'s Br. at 5–12; Def.'s Br. at 4.[2]

Plaintiff's report card from the 2014-15 school year, during which he was in the first grade, shows him as mostly "developing" (not yet consistent in demonstrating an understanding of concepts, skills, and processes taught even with support) or "emerging" (not demonstrating an understanding of grade level concepts, skills, and processes and performing significantly below grade level expectations) in his foundational reading/comprehension skills, operations and algebraic thinking, social studies, and science. R. at 206–07.

Plaintiff's report card from the 2015-16 school year, during which he was in the second grade, shows him as mostly "developing" or "emerging" in his reading standards for informational text and literature, foundational skills, writing standards, speaking and listening standards, language standards, and mathematical standards. Id. at 215–23. Plaintiff's first Individualized Education Program ("IEP") was implemented during this year and generally

---

[2] In its citations to Plaintiff's Brief and Defendant's Brief, the Court refers to the page numbers produced by CM/ECF, not the page numbers stamped onto the documents themselves.

shows Plaintiff progressing gradually towards the IEP's goals. Id. Plaintiff's report card noted multiple times that repetition and review were essential because of Plaintiff's memory issues. Id. The report card also notes that Plaintiff's hearing deficits were a major contributor to his deficits in both reading and writing since he could not hear things properly. Id. This led to him not being able to pronounce or spell words properly. Id. Lastly, this report card notes that Plaintiff's struggle to focus interfered with his academic progress. Id.

For reading, Plaintiff struggled with focus and attention. Id. at 216–17. Plaintiff was also inconsistent on completing skills and tasks, requiring additional help and prompting. Id. The reading specialist noted that Plaintiff was placed one grade level below his current grade on a reading assessment test and could not read words but instead guessed what made sense. Id. at 158–65, 216–17. Plaintiff's second grade teacher, Erica Webster, noted that he had difficulty following multi-step questions, did not participate in class discussions, and rarely raised his hand. Id. He needed guidance to state the main idea of a story, he had a hard time identifying letters and sounds of the alphabet, and his sight word vocabulary was below grade level. Id.

For math, Plaintiff required a lot of small group and one-on-one support, was easily distracted, exhibited poor organization and neatness, and rushed through his work and made careless errors. Id. at 179. He used graph paper to align his problems which "help[ed] with his fine motor weaknesses." Id. Plaintiff was also one grade level below his current grade on a math assessment. Id. at 179, 218. Plaintiff's math specialist noted that Plaintiff had difficulty distinguishing between different mathematical operations, had difficulty with word problems, and did not understand necessary concepts. Id. at 179.

For writing, Plaintiff's second grade teacher noted that his assignments were difficult to read due to lack of neatness, he did not represent all of the sounds in the words, he did not put his ideas in complete sentences, and he used capital letters in the middle of words. Id. at 179, 218. According to Plaintiff's Instructional Support Team, Plaintiff had problems with handwriting, drawing, lining things up properly, cutting, and coloring. Id.

On January 13, 2016, Ms. Webster filled out a Teacher Questionnaire provided by the SSA. Id. at 158–65. She noted Plaintiff's struggles in math, reading, and writing on this evaluation. Id. In addition, she noted that Plaintiff had a slight problem sustaining attention during sports and when carrying out assigned activities or tasks. Id. Ms. Webster also noted that Plaintiff had a slight problem playing cooperatively with others, making and keeping friends, expressing anger appropriately, and using language appropriate to the situation. Id. Ms. Webster added that while Plaintiff's behavior within the classroom is mostly appropriate, his behavior outside the classroom is generally not appropriate. Id. at 161.

Plaintiff's fourth grade 2017–18 IEP report card noted that his math and English competencies were improving, although he was still performing at a second-grade level. Id. at 224–29. Continuation of occupational therapy was recommended due to Plaintiff's below average visual motor and sensory processing abilities within the classroom environment. Id. The report card also noted that Plaintiff continued to have significant delays in reading, math, and written expression and that while he was gradually progressing towards his goals within the IEP, the pace and environment of a general education classroom would impede his progress. Id.

On March 6, 2018, Plaintiff's teacher, Lisa Rosenbarker, filled out a Teacher Questionnaire provided by the SSA. See id. at 197–203. Ms. Rosenbarker stated that Plaintiff

was in fourth grade but his instructional reading and math levels were at second grade and his written language level at first grade. Id. at 197. She noted that Plaintiff had a serious problem "understanding school and content vocabulary," reading and comprehending written material, comprehending and doing math problems, understanding and participating in class discussions, learning new material, recalling and applying previously learned material, and a very serious problem comprehending oral instructions. Id. at 198–202.

On a Testing Accommodation Decision-Making Tool for "Tests Read" attachment, it is noted that even after explicit and systematic reading instruction, Plaintiff had difficulty decoding print and his performance on print-based tasks improved when information was presented in auditory formats. Id. at 205.

### C.  ALJ Decision

ALJ Morrison first found that Plaintiff had severe impairments including bilateral sensorineural hearing loss with excellent speech recognition and a need for hearing aids, a learning difficulty, attention deficit hyperactivity disorder (ADHD), and oppositional defiant disorder (ODD). Id. at 14–16. ALJ Morrison then found that Plaintiff had less than marked limitations in each of the six functional domains: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating well with others, (4) the ability to care for himself, (5) his health and physical well-being, and (6) moving about and manipulating objects. Id. at 16–32. Based on these findings, the ALJ held that Plaintiff was not disabled and not entitled to supplemental security income. Id. at 32–33.

### D.  Appeal

Plaintiff appeals the ALJ's evaluation of three of the six functional domains. Plaintiff claims that he has at least marked limitations in (1) acquiring and using information, (2) attending and completing tasks, and (3) interacting and relating with others. Plaintiff claims that although the ALJ acknowledged many of Plaintiff's limitations in these areas, he failed to properly evaluate them with respect to each of these functional domains.

### III.   STANDARD OF REVIEW

#### A.  ALJ Decision

When a district court reviews an ALJ's decision, it must determine whether the ALJ applied the correct legal standards and whether his or her decision is supported by substantial evidence in the record. See 42 U.S.C. § 405(g). Substantial evidence amounts to "more than a mere scintilla," and it must reasonably support the decision maker's conclusion. Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). A court will defer to the ALJ's decision if it is supported by substantial evidence, "even if [the court] might justifiably have reached a different result upon a *de novo* review." Sixberry v. Colvin, No. 12-CV-1231, 2013 U.S. Dist. LEXIS 134688, at *3 (N.D.N.Y. Sept. 20, 2013) (quoting Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984)). However, a court should not uphold the ALJ's decision—even when there is substantial evidence to support it—if it is based on legal error. See Bubnis v. Apfel, 150 F.3d 177, 181 (2d Cir. 1998).

Courts have two options upon determining that the Commissioner's decision was not supported by substantial evidence. See McClain v. Barnhart, 299 F. Supp. 2d 309, 324 (S.D.N.Y. 2004), report and recommendation adopted, 2004 U.S. Dist. LEXIS 1177. If the administrative record contains gaps, the court should remand for further development. See id. (citing Parker v.

6

Harris, 626 F.2d 225, 235 (2d Cir. 1980)). "If, however, the record provides 'persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose,' the court may reverse and remand solely for the calculation and payment of benefits." See McClain, 299 F.Supp.2d at 324 (quoting Gold v. Sec'y of Health, Education & Welfare, 463 F.2d 38, 44 (2d Cir. 1972)).

### B. The Six Functional Domains

To qualify for social security income (SSI), a child under the age of eighteen must have "a medically determinable physical or mental impairment which results in marked and severe functional limitations and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(C). The Social Security Regulations provide a three-step sequential analysis to determine whether a child is disabled and therefore eligible for SSI. Hamedallah ex rel. E.B. v. Astrue, 876 F. Supp. 2d 133, 140 (N.D.N.Y. 2012). First, the ALJ is to consider whether the child is engaged in "substantial gainful activity." Id. Second, the ALJ considers whether the child has a medically determinable impairment that is severe. Id. Third, if the ALJ finds a severe impairment, he must then consider whether the impairment medically or functionally equals a disability listed in the regulatory "Listing of Impairments." Id., 20 C.F.R. § 416.924(c)–(d).

To demonstrate functional equivalence to a disability, the child must exhibit a "marked" limitation in two of six functional domains, or an "extreme" limitation in one of the domains. The domains are 1) the child's ability to acquire and use information, 2) the child's ability to attend and complete tasks, 3) the child's ability to interact and relate with others, 4) the child's

ability to move about and manipulate objects, 5) the child's ability to care for himself, and 6) the child's health and physical well-being. 20 C.F.R. § 416.926(b)(1).

A child has a "marked" limitation if the impairment "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926(e)(2)(i). An "extreme" limitation exists when the impairment "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926(e)(3)(i).

## IV.  DISCUSSION

Only the ALJ's evaluation of three out of the six functional domains at step three are on appeal. Pl.'s Br. at 3. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that functionally equaled a disability, because Plaintiff did not have a marked limitation in any of the six functional domains. Id. at 16–32. For the reasons below, the Court finds that the ALJ failed to properly weigh evidence regarding Plaintiff's ability to acquire and use information and attend and complete tasks. Because the ALJ's findings for these two domains are not supported by substantial evidence, the Court remands the case so that the Commissioner can further develop the record.

### A. Acquiring and Using Information

Substantial evidence does not support the ALJ's finding that Plaintiff does not exhibit a marked limitation in acquiring and using information. In assessing this domain, the ALJ must consider how well a child acquires or learns information and how well he can use the information he has learned. 20 C.F.R. § 416.926a(g). For children Plaintiff's age, SSA regulations provide:

> When you are old enough to go to elementary and middle school, you should be able to learn to read, write, and do math, and discuss history and science. You will need to use these skills in academic situations to demonstrate what you have learned; e.g., by reading about various subjects and producing oral and written projects, solving mathematical problems, taking achievement tests, doing group work, and entering into class discussions. You will also need to use these skills in daily living situations at home and in the community (e.g., reading street signs, telling time, and making change). You should be able to use increasingly complex language (vocabulary and grammar) to share information and ideas with individuals or groups, by asking questions and expressing your own ideas, and by understanding and responding to the opinions of others.

20 C.F.R. § 416.926a(g)(2)(iv).

An analysis of this domain should discuss school records and non-medical evidence provided by a teacher, who works with a child on a daily basis and observes them in a social setting with peers and adults. Hamedallah, 876 F. Supp. 2d at 146–47. Examples of limitations in this domain can include the child having difficulty remembering what was learned in school the day before, not using language appropriate for their age, and struggling with following simple instructions. 20 C.F.R. § 416.926a(g)(3).

Here, the ALJ found that Plaintiff had a "less than marked" limitation in this domain. R. at 25–26. The ALJ concluded:

> [C]onsideration of the entirety of the claimant's record reveals that he does not have marked or extreme limitations in this functional area. Inconsistent with [the father's] testimony of a designation of "mental retard[ation]," the claimant's Psychoeducational Assessment did not reveal any borderline intellectual functioning scoring. . . . This test . . . displayed low average range verbal ability, cognitive efficiency and reading/math abilities, but average thinking ability. The claimant also had some cognitive weakness in his short/long-term memory and processing speed. Yet, on the Test of Expressive Language . . . he achieved average scores.

Id. at 25.

Although the ALJ acknowledged Plaintiff's limitations, he failed to properly evaluate them with regard to this factor. Average test scores should be acknowledged, but they are not dispositive. See Carballo ex rel. Cortes v. Apfel, 34 F. Supp. 2d 208, 218 (S.D.N.Y. 1999) ("A child of normal intelligence can also be cognitively impaired if some condition other than a low IQ severely affects the child's ability to progress in the skills involved in reading, writing and arithmetic."); Vazquez ex rel. J.V. v. Colvin, No. 13-CV-6372P, 2015 WL 1241251, at *19 (W.D.N.Y. Mar. 18, 2015) ("IQ scores alone do not constitute substantial evidence supporting the ALJ's determination of less than marked impairments."). The ALJ failed to assign weight to Plaintiff's teachers' statements noting Plaintiff had serious, and very serious, problems with multiple activities relating to acquiring and using information. See e.g., R. at 198. In addition, the ALJ used Plaintiff's Progress Report as evidence that Plaintiff had less than a marked limitation in this domain. Id. at 25. However, the ALJ did not acknowledge that this Progress Report detailed goals of Plaintiff's IEP and did not compare him to his peers that did not have impairments. See F.M. v. Astrue, No. 08-CV-4430, 2009 WL 2242134, at *9 ("[G]ood performance in a special education setting does not mean that [claimant is] functioning at the same level as other children [his] age who do not have impairments. . . . [T]he fact that [claimant] has improved [as noted in his IEP report] is insufficient to support a finding that [claimant]'s functional limitations are not marked."); Hamedallah, 876 F. Supp. 2d at 147 (holding that a finding of less than marked limitation is unsupported by substantial evidence when the ALJ fails to consider the child's improvements were in a structured special education setting).

As it currently stands, substantial evidence does not support the ALJ's finding that Plaintiff does not exhibit a marked limitation in acquiring and using information. Although the ALJ did mention relevant evaluations relating to this domain, he failed to properly analyze and weigh these evaluations. On remand, the Commissioner should develop the record further to properly evaluate the progress report, teacher's comments, and other relevant documents within Plaintiff's record and weigh them against his test scores.

### B. Attending and Completing Tasks

Substantial evidence does not support the ALJ's finding that Plaintiff does not exhibit a marked limitation in attending and completing tasks. This domain gauges how well a child is able to focus and maintain attention. 20 C.F.R. § 416.926a(h). For children of Plaintiff's age, the regulations provide:

> When you are of school age, you should be able to focus your attention in a variety of situations in order to follow directions, remember and organize your school materials, and complete classroom and homework assignments. You should be able to concentrate on details and not make careless mistakes in your work (beyond what would be expected in other children your age who do not have impairments). You should be able to change your activities or routines without distracting yourself or others, and stay on task and in place when appropriate. You should be able to sustain your attention well enough to participate in group sports, read by yourself, and complete family chores. You should also be able to complete a transition task (e.g., be ready for the school bus, change clothes after gym, change classrooms) without extra reminders and accommodation.

20 C.F.R. § 416.926a(h)(2)(iv).

Some examples of limited functioning include: (1) being easily startled, distracted, or overreactive to sounds, sights, movements, or touch, (2) being slow to focus on or fail to complete activities of interest, (3) becoming repeatedly sidetracked from activities or frequently

11

interrupting others, and (4) being easily frustrated and giving up on tasks. 20 C.F.R. § 416.926a(h)(3). A marked limitation will interfere seriously with an individual's ability to initiate, sustain or complete activities, and limit day-to-day functioning. 20 C.F.R. § 416.926a(e)(2).

The ALJ acknowledged that Plaintiff "may exhibit some task persistence." R. at 27. However, because he was recently prescribed ADHD/ODD medications which would presumably increase his focus and reduce his symptoms, and because he did not "appear to disrupt the learning of his classmates," the ALJ found that Plaintiff had less than marked limitations for this domain. Id.

Here, the ALJ improperly discounted much of Plaintiff's evidence demonstrating limitations in this domain; and although the ALJ noted that Plaintiff had poor focus and other symptoms indicating a limitation in this domain, the ALJ assumed these would be alleviated with Plaintiff's medication. As with the previous factor, the ALJ failed to evaluate and assign weight to Plaintiff's behavior modification plans by Ms. Webster and his "serious" and "very serious" problems with focusing and accomplishing tasks. See e.g., id. at 158–65. The ALJ similarly cited Plaintiff's Progress Reports while failing to acknowledge that they were for his IEP and did not compare Plaintiff to his peers without impairments. Id. at 27.

As in the first domain, substantial evidence does not support the ALJ's finding that Plaintiff does not exhibit a marked limitation in attending and completing tasks. The ALJ failed to evaluate Plaintiff's behavior modification strategies and reports detailing Plaintiff's difficulties in paying attention and carrying out tasks. Furthermore, the ALJ assigned undue weight to the supposed effects of Plaintiff's new ADHD/ODD medications. See Archer ex rel.

J.J.P. v. Astrue, 910 F. Supp. 2d 411, 424 (N.D.N.Y. 2012) ("[T]he fact that [claimant] had begun taking ADHD medication in June 2009 did not mean the medication would necessarily be effective in treating her. The record contains no medical account of the effectiveness of Focalin XR in decreasing the severity of [claimant's] impairments."); cf. Hamedallah, 876 F. Supp. 2d at 149 (holding that ALJ's finding of no marked limitation in attending and completing tasks was not supported by substantial evidence when the ALJ ignored teacher's observations and instead relied upon the "lack of any medication to treat ADHD as a basis for his conclusion that [claimant] has 'only a less than marked limitation in this domain.'"). The fact that Plaintiff is being treated for ADHD and ODD may show precisely how severely he is limited by these disorders. On remand, the Commissioner should develop the record further in order to properly evaluate Plaintiff's record with respect to this domain.

### C. Interacting and Relating with Others

The ALJ's finding that Plaintiff does not exhibit a marked limitation in interacting and relating with others is supported by substantial evidence. This domain considers how well the child initiates and sustains emotional connections with others, develops and uses the language of his community, cooperates with others, complies with rules, responds to criticism, and respects and takes care of the possessions of others. 20 C.F.R. § 416.926a(i). For children Plaintiff's age, SSA regulations provide:

> When you enter school, you should be able to develop more lasting friendships with children who are your age. You should begin to understand how to work in groups to create projects and solve problems. You should have an increasing ability to understand another's point of view and to tolerate differences. You should be well able to talk to people of all ages, to share ideas, tell stories, and to speak in a manner that both familiar and unfamiliar listeners readily understand.

20 C.F.R. § 416.926a(i)(2)(iv).

Limitations in this domain can include the child having difficulty cooperating with others, having difficulty playing games or sports with rules, and having difficulty communicating with others. 20 C.F.R. § 416.926a(i)(3).

Here, the ALJ properly weighed Plaintiff's ability to maintain friendships and communicate within the classroom against Plaintiff's tendency to "become inappropriate outside the classroom" and his "serious problems in following rules." R. at 28–29. Plaintiff acknowledges in his appeal that he can speak to others and be understood, although he sometimes has difficulties making sense of that communication. Pl.'s Br. at 21. The evidence in the Record demonstrating Plaintiff's abilities and difficulties with respect to this domain was properly acknowledged and evaluated by the ALJ. See e.g., Johnson v. Astrue 563 F. Supp. 2d 444, 459–60 (S.D.N.Y. 2008) ("Thus, while a good portion of the record shows that [claimant] has difficulty forming and maintaining healthy friendships among his peers, it was not unreasonable for the ALJ to balance this evidence against . . . the evidence that he is sometimes socially successful among his peers, in drawing the conclusion that any impairment [claimant] has in this domain is not greater than moderate."). Although there may be evidence in favor of Plaintiff, the ALJ's finding that Plaintiff is not markedly limited in interacting and relating with others is supported by substantial evidence.

### V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the decision denying Plaintiff's application for supplemental security income is **REMANDED** to the Commissioner for further proceedings consistent with the above; and it is further

**ORDERED**, that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the local rules.

**IT IS SO ORDERED.**[3]

DATED:   October 27, 2020
         Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge

---

[3] Due to the delays and disruptions caused by the COVID-19 pandemic, some cases/motions were not disposed of prior to the end of the reporting period.